MUTSCHMAN ET AL. *v.* PETRY, ADMX.

526

(Decided October 28, 1933.)

*Messrs. Hart, Koehler, Blumenstiel & Strong,* for plaintiffs in error.

*Messrs. Amerman & Mills,* for defendant in error.

SHERICK, P. J.   By this proceeding in error L. F. Mutschman and K. E. Reighard, physicians and surgeons of the city of Alliance, seek a reversal of a judgment entered against them on the jury's verdict in an action in malpractice.   One R. T. Strauss, a dental

surgeon of the same city, was also a defendant in the trial court. The jury returned no verdict against him. He is therefore not here complaining. The parties will hereinafter be referred to as they stood in the court of first instance.

On January 18, 1929, the husband of the plaintiff, Viola Petry, became ill. His malady was a duodenal ulcer. He sustained a considerable loss of blood, which was evidenced by frequent vomiting and bowel discharge. Dr. Reighard was called to care for him, and procured his removal to a hospital, where he was observed and treated by Reighard and Mutschman, who had been called into the case for consultation and proposed surgical aid.

On January 22, a blood transfusion was resorted to in order that the patient might be strengthened for operative treatment. Thereafter the defendants concluded that a bridge, anchored upon a single tooth, should first be removed; and to this end Dr. Strauss was called to extract the tooth. This was done. It is pleaded and contended that this was done against the patient's protest. The socket bled profusely, and Dr. Strauss packed it with gauze. The patient was then under an anæsthetic, and defendants proposed to then further perform a gastro-enterostomy. One Dr. Rutledge, who anæsthetized the patient, objected, and the major operation was postponed. During this period the ulcer continued to hemmorhage profusely. Twenty-four hours after the extraction the packing was removed from the socket. The gauze removed was foul smelling. The socket was then repacked. No tests were then made for tetanus bacilli.

The evidence discloses that at midnight of January 22, the nurse in charge made notation on the daily hospital record that the patient manifested occasional jerking or muscular twitching and hypersensitiveness to noises. This, we learn from the evidence, is the first positive symptom of tetanus infection.

On the morning of January 23, the contemplated operation was performed by Dr. Mutschman, who was assisted by Dr. Reighard. No immediate change was noted in the patient's condition. In the evening of January 25, the patient died of a traumatic tetanus infection. A culture was then taken from the packing in the tooth's socket, and the infection's presence and source were definitely located.

It is the chief claim of the plaintiff, strenuously denied by the defendants, that the doctors were jointly negligent in not suspecting and discovering the presence of tetanus, originating in the socket, in their failure to use ordinary care in its treatment, and in hastening and performing the operation when the patient's condition was so precarious and chances of recovery so remote. It is not charged that the operation was unskillfully done, but that the operation destroyed the patient's resistance, hastened and directly contributed to his death, and was therefore the proximate cause.

The defendants adversely maintain that there was a misjoinder of parties defendant, and that a joint verdict could not be properly rendered against them. In conformity to this theory the doctors individually moved for a withdrawal of the case from the jury. Each also moved for an exclusion from the consideration of the jury of all evidence relating to the separate negligent acts of each of the other two defendants. The third set of motions required the plaintiff to elect which one of the three defendants the action should proceed against. These motions, as well as the motion for a new trial, were overruled by the trial court.

It is contended that the defendants were not joint tort-feasors or partners, or that either was an employee of the other, and it is contended that they must be considered as independent agents, without concert of action, collusion, or common design; hence that each is only responsible for his own negligence, and nothing more. A host of supporting authorities are advanced

for our consideration, with which we may not quarrel. We do, however, question their applicability to the facts here presented.

It is said in *Village of Mineral City* v. *Gilbow*, 81 Ohio St., 263, 273, 90 N. E., 800, 25 L. R. A. (N. S.), 627: "If there is no concert of action—no common intent—there is no joint liability. * * * But a different principle applies where the injury is the result of a neglect to perform a common duty resting on two or more persons, although there may be no concert of action between them."

This court, as constituted at the time of decision of the case of *Manley* v. *Coleman*, 19 Ohio App., 284, recognized and applied this different principle, which we think meets precisely the present inquiry. Reighard recommended and procured Mutschman. Each had an equal opportunity of diagnosing their patient's ailment and prescribing a remedy. Each consulted with the other, and each advised the operation. Each was present at the time of the surgery, one operating, the other assisting. Each participated and approved in all that was done and not done. There was, therefore, a concert of action and a common purpose and design, which the jury might and did find to exist.

It is next urged that the court erred in permitting an improper method of proof of certain facts, and then further erred in permitting expert opinions to be given based upon such improperly established matter (a) with details as to facts upon which opinions were based, and (b) by giving opinions as to ultimate questions to be determined by the jury.

The method of proof employed and complained of is that Dr. Mutschman was first called for cross-examination and presented with the hospital chart or records of the case. This chart was identified by the witness; in fact, it, in part, contained his dictated story of the operation, of which he admitted authorship. It contained some of Dr. Reighard's notations which he

identified. He recognized it as the hospital chart. He testified from and concerning it, and did not deny its authenticity. We conclude it was properly identified and admitted in evidence.

The plaintiff, then, called one Dr. Morgan, who had read and studied the chart. Hypothetical questions calling for his opinions were propounded to him, based solely on the facts disclosed by the chart, without a recitation of the facts appearing therein. This manner of producing opinion evidence by expert testimony is unusual, but not necessarily erroneous. It does not do injustice to the rule that the question must fully and fairly reflect the facts. The expert knew all his facts from the chart. He knew no other. The fact that they were not repeated in the questions seemed to us rather technical. True, it does not appear that the chart had been first read to the jury. But we later find it used by the defendants in examination of witnesses and in argument to the jury. It went into the jury room accompanied by requests of both parties, that the jury examine it closely. If there was error, we find it not to have been prejudicial in character. The same comment is made as to the expert's opinions as to the ultimate questions to be determined by the jury.

The third claim of error is that the alleged negligence of the defendants was not shown to be the proximate cause of death. This, we feel, has already been answered in our consideration of the first error alleged.

The fourth reason assigned for reversal is misconduct of counsel in argument in commenting outside the record. One instance appears. This the court corrected. If other like excursions were engaged in, which we are unable to find from the record, counsel for the defendants sat idly by without objection or comment. We see no prejudicial error in this respect. It was not such misconduct as the court should have corrected on his own initiative.

The fifth question made deserves a more-extended

consideration. It presents a feature of malpractice law not previously considered in any reported Ohio case that we have been able to find. The trial court's refusal to give defendants' special request No. 8 is its vehicle.

It reads: "If you find from the evidence in this case that if physicians and surgeons practicing medicine and surgery in the City of Alliance or vicinity had been engaged in the care and treatment of the case of Joseph Petry, and in the exercise of ordinary care would not have diagnosed a tetanus infection under the circumstances of his illness and condition prior to the time of his operation, then the defendants in this case would not be chargeable with negligence in not making a diagnosis of tetanus infection prior to such operation and would not be liable in this case on that charge of. negligence."

The words "in the City of Alliance or vicinity" improperly limit and confine the degree of care resting upon the defendants. This request was therefore improper, and was correctly refused. We shall now voice our reason and authority for so holding, keeping before us that the accepted meaning of the word "vicinity" as given by Webster is "That which is near, or not remote," and that jurors might have different conceptions of what is near. We also are mindful that plaintiff's expert witnesses are practitioners of a neighboring county.

The court in *Gillette* v. *Tucker,* 67 Ohio St., 106, 65 N. E., 865, 93 Am. St. Rep., 639, approaches the thought we entertain, when it says that a surgeon "assumed to exercise the ordinary care and skill of his profession, in the light of the modern advancement and learning on the subject, and became liable for the injuries resulting from his failure to do so."

We would cite five cases and quote from two which fully set forth our views. It is held in *Whitesell* v. *Hill,* 101 Iowa, 629, 70 N. W., 750, 37 L. R. A., 830, as

follows: "The degree of knowledge, care, and skill required of a physician or surgeon is that which is ordinarily possessed by those practicing in similar localities, and is not necessarily limited to that which is in fact exercised in his particular locality."

The case of *Gramm* v. *Boener*, 56 Ind., 497, cited in 93 Am. St. Rep., 661, note, has this to say, at page 501: "It will not do, as we think, to say, that if a surgeon or physician has exercised such a degree of skill as is ordinarily exercised in the particular locality in which he practises, it will be sufficient. There might be but few practising in the given locality, all of whom might be quacks, ignorant pretenders to knowledge not possessed by them, and it would not do to say, that, because one possessed and exercised as much skill as the others, he could not be chargeable with the want of reasonable skill."

See, also, *Viita* v. *Fleming*, 132 Minn., 128, 155 N. W., 1077, Ann. Cas., 1917E, 678, L. R. A., 1916D, 644, and note; *McCracken* v. *Smathers*, 122 N. C., 799, 29 S. E., 354; *Burk* v. *Foster*, 114 Ky., 20, 69 S. W., 1096, 59 L. R. A., 277, 1 Ann. Cas., 304. This standard finds expression in 21 Ruling Case Law, 385.

The sixth error assigned, that is, error in the general charge, needs little comment. It is complained of that the issues were not defined. We do not find it so. Taken in conjunction with the seven special requests given at the defendants' instance, we are of opinion that the issues were fully charged. If there was an omission, the defendants made no such suggestion to the court. Counsel were derelict in duty by not so doing.

Finding no prejudicial error herein, the judgment may be affirmed.

*Judgment affirmed.*

LEMERT and MONTGOMERY, JJ., concur.