Sharp, Respondent, v. Milwaukee & Suburban Transport Corporation, Appellant.

*November 29—December 29, 1961.*

For the appellant there were briefs by *Kivett & Kasdorf*, attorneys, and *John M. Swietlik* of counsel, all of Milwaukee, and oral argument by *Mr. Swietlik*.

For the respondent there was a brief by *Schneiderman & Strnad* of Milwaukee, and oral argument by *Burton A. Strnad*.

FAIRCHILD, J.   It is conceded that plaintiff suffers from tennis elbow (epicondylitis) and apparently the condition will not improve.  There is testimony that a tennis elbow may be caused by a blow or may be caused by certain types of repetitive work involving excessive use of certain

muscles. It is clear that the first jury found that the impact of the door on plaintiff's arm caused the tennis elbow and that the second jury found it did not.

Plaintiff's position is that the first trial and the partial approval of the verdict implied in our decision on appeal established beyond further dispute that the impact caused the tennis elbow. She requested an instruction to that effect on the second trial and objected to certain evidence to the contrary.

Defendant's position is that it was entitled to prove that the tennis elbow was not caused by the impact of the door on plaintiff's arm. It did this in two steps:

(1) By testimony tending to show that the door had impact with plaintiff's right forearm or wrist and not above the elbow as testified by the plaintiff; and

(2) By offering expert testimony that the type of work performed by plaintiff in her employment would, without any history of injury to the outer side of the elbow, be the logical cause, and that the closing of the door on the forearm just above the wrist could not cause the tennis elbow.

Thus the argument revolves around the scope of the phrase in our mandate "issue of damages only." The driver's negligent shutting of the door caused an impact with plaintiff's arm; that impact and the forward movement of the bus allegedly caused the tennis elbow as well as the temporary effects described. Defendant contends that the "issue of damages" includes all questions as to what resulted from the driver's negligence, including the location on plaintiff's arm of the impact with the door. Plaintiff would exclude from the "issue of damages" all questions as to whether the tennis elbow was caused by the driver's negligence.

It is necessary to examine the questions dealt with in the former opinion in order to determine the scope of the "issue of damages" referred to in our mandate.

On the first appeal the following points were raised in the briefs on behalf of defendant:

(1) Impropriety of use of a blackboard and a per diem formula in argument on pain and suffering;

(2) Perversity and excessiveness of the verdict of $13,500;

(3) Refusal of the trial court to give a requested instruction as to the facts which plaintiff must prove with respect to the occurrence of the accident;

(4) Error in instructing the jury on a loss of earning capacity because (a) there was no testimony as to loss of income, and (b) the testimony of plaintiff's medical expert would not support the finding that the blow to the arm caused the tennis elbow;

(5) Giving an incorrect form of instruction with respect to loss of earnings;

(6) Refusal to allow a hypothetical question to be put to defendant's medical expert inquiring as to the cause of the tennis elbow and excluding the happening of the accident from the hypothesis; and

(7) Giving an instruction which allegedly assumed the occurrence of the accident.

The opinion on appeal includes discussion and decision of points numbered 1, 2, 3, and 7. On page 616 it referred to the cases cited by defendant with respect to point 4 (a), but stated that this need not be decided because there must be a new trial. The opinion also stated, at page 618: "It is not necessary to consider the other points raised by the defendant as they concern the question of damages." These other points must have included 4 (b) and 6 which involved the question of whether the plaintiff had sufficiently proved that the blow caused the tennis elbow, or whether defendant had been improperly deprived of an opportunity to prove that plaintiff's work caused it. Because we said that these points related to damages, the new trial must include

whatever issue could be made as to whether the blow described by plaintiff caused the tennis elbow.

Plaintiff relies on language in the opinion at page 615 that, "The plaintiff's injury consisted of a tennis elbow, . . ." and on page 616 that, "There is no doubt that the plaintiff's injury is permanent . . ." Plaintiff contends that we thus stated or implied that the injury referred to, the tennis elbow, was sufficiently shown to be a result of the defendant's negligence, and that that issue was not left open for the new trial. Those statements were made, however, in connection with our review of the evidence to determine whether, considered most favorably to the plaintiff, it would support the amount awarded. In any event, the claimed implication cannot be drawn in view of our statement that defendant's other points (involving this very question of causal relationship between the impact and the tennis elbow) concerned the question of damages and therefore need not be considered.

We conclude, however, that the circuit court correctly ordered a new trial. Defendant had, on the second trial, produced evidence tending to show that plaintiff did not and could not have struck her arm in the area of her elbow. In the opinion on the former appeal in discussing the matter of instructions, we said, at page 617:

"We do not see where any real issue was raised over whether the accident in fact happened. The instruction given was not erroneous and covered the issues. It required a finding by the jury not only that the accident occurred, but in the manner described by the plaintiff, *i.e.,* that the door closed on her arm while she was boarding the bus."

Plaintiff's testimony on the first trial in this respect was not contradicted by any other testimony, and was as follows:

" '*Q.* Did the doors strike your arm? *A.* Yes, it did.
" '*Q.* Will you point to what portion? *A.* Right across the elbow this way (indicating).

" 'Q. You are pointing to the upper side of your arm? A. Yes.

" 'Q. An inch or two inches immediately above the elbow? A. Above the elbow.

" 'Q. The right arm. A. The right arm.' "

On the first trial defendant relied solely on plaintiff's inability to prove that her arm was caught in the door.

It was error to permit defendant to introduce evidence on the second trial inconsistent with the testimony of plaintiff on the first trial describing the manner in which the accident occurred, the blow which she received, and its location.

Defendant argues that plaintiff opened up this issue by testifying on the second trial with respect to the manner in which the door closed on her arm. We view testimony on this subject as a means of getting the previously established facts before the jury. Under most circumstances this could be better done by testimony than by instructions of the court or other means. The jury would have to know the manner in which the injury occurred in order to evaluate any pain, fright, and shock immediately resulting, as well as to determine whether the injury caused the other symptoms testified to. The testimony which simply brought before the jury facts of this type did not reopen issues which were determined by the first verdict and our partial approval thereof.

*By the Court.*—Order affirmed.