FEHRMAN and wife, Respondents, v. SMIRL, Appellant.

*October 30—November 24, 1964.*

646

648

For the appellant there was a brief by *Moore & Moore,* and oral argument by *Raymond J. Moore* and *Frank T. Crivello,* all of Milwaukee.

For the respondents there was a brief by *Mount & Keck* of Milwaukee, and oral argument by *Herbert L. Mount* and *John A. Keck*.

GORDON, J. Some of the appellant's arguments on this appeal are directed at claimed errors in our previous opinion in this case. *Fehrman v. Smirl* (1963), 20 Wis. (2d) 1, 121 N. W. (2d) 255, 122 N. W. (2d) 439. We recently had occasion to reiterate the rule that on a second appeal the supreme court will not reconsider its rulings made on the earlier appeal. In *Cathey v. Industrial Comm.* (1964), ante, pp. 184, 186, 130 N. W. (2d) 777, this court stated:

"We will not re-examine the merits of those contentions of the appellant which were involved in the previous appeal."

In the opinion rendered on the previous appeal, we declared, at page 28a, as follows:

"In conducting the new trial, none of the facts stated herein are to be construed as the 'law of the case' or as limiting the scope of the evidence which may properly be admissible during such new trial."

Accordingly, some of the issues decided upon the first appeal may be considered insofar as there was proof at the second trial which was divergent from that received at the first trial.

### Form of Verdict Question One.

We have quoted above the full text of Question One of the special verdict which was submitted to the jury. The appellant contends that, as framed, such question assumes that Mr. Fehrman's external sphincter was in fact subjected to an injury. The proper approach, according to the appellant, was to inquire whether the external sphincter had

been damaged. Upon the appellant's theory of this case, either there was no damage to the external sphincter or, if there were, it may have been caused by disease rather than injury.

At page 28 of this court's opinion on the first appeal, we stated:

"If during the new trial the evidence which allegedly shows negligence on Dr. Smirl's part only concerns injury to the external sphincter, we would recommend submitting an additional question, as the first question of the special verdict, inquiring whether Fehrman's external sphincter was injured in the course of the first or second operations, or the postoperative care."

We conclude that the challenge to the form of the first question of the verdict is without merit. We disagree with the appellant's premise that the form of the question suggests to the jury that there was in fact an injury. In our opinion, the question fairly makes inquiry into a time interval during which the injury, if any, may have occurred. Neither *Affett v. Milwaukee & Suburban Transport Corp.* (1960), 11 Wis. (2d) 604, 106 N. W. (2d) 274, nor *Sharp v. Milwaukee & Suburban Transport Corp.* (1961), 15 Wis. (2d) 268, 112 N. W. (2d) 597, justifies the appellant's contention that a different question should have been submitted inquiring whether Mr. Fehrman's external sphincter was damaged.

### Res Ipsa Loquitur.

On behalf of Dr. Smirl, counsel argues that it was improper for the trial court to have given Mr. Fehrman the benefit of an instruction on *res ipsa loquitur*. Once again, we encounter the appellant's theory that it was Mr. Fehrman's syphilitic condition which may have caused his urinary incontinence. Since neither Dr. McDonnell nor Dr.

Smirl was in charge of the patient in connection with the disease of his central nervous system, it is contended that *res ipsa loquitur* does not apply. *Turk v. H. C. Prange Co.* (1963), 18 Wis. (2d) 547, 554, 119 N. W. (2d) 365.

Our examination of the record persuades us that Mr. Fehrman's disease did not contribute to his problem of urinary incontinence except in "a relatively minor way," as Dr. Scheifley phrased it. This conclusion is also consistent with Dr. Schaefer's observation that the changes in the brain associated with syphilis are not of such severity as to cause incontinence.

From the medical testimony, any contribution which Mr. Fehrman's disease may have made to his urinary incontinence did not rise to the dignity of being a "substantial factor" so as to permit it to qualify as a legal cause under *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. (2d) 29.

There was direct medical proof of negligence. Asked his opinion as to whether Mr. Fehrman's external urinary sphincter would have been damaged during the operative procedures and intervening treatments performed upon him by Drs. Smirl and McDonnell, Dr. Trangsrud gave the following answer:

". . . it is my opinion that this result would not have occurred if they, or either of them, or both, had been exercising the proper skill and care and diligence that is expected of them in the performance of this operation, suprapubic prostatectomy."

The foregoing statement of Dr. Trangsrud was directed at the very same inquiry which was to be resolved by the jury. In the previous appeal, at page 18, it was noted that this court "is committed to the principle that expert opinion testimony is not objectionable merely because it covers one of the ultimate facts to be determined by the jury."

Upon rehearing of the first appeal, we said, at page 28b:

"Whether the evidence presented warrants the giving of a *res ipsa loquitur* instruction always presents a question of law for the trial court to pass on. At the instant trial no medical witness testified directly that the injuring of the external sphincter in performing a prostatectomy constitutes want of ordinary care on the part of the operating surgeon.
. . .

"Whether it will be proper to give a *res ipsa loquitur* instruction at the new trial will depend on the expert testimony presented."

While Dr. Trangsrud's testimony constitutes direct proof of malpractice, it does not particularize the nature of the negligence which he had in mind. In other words, the jury was not expressly told by Dr. Trangsrud in what precise manner the two doctors failed to exercise proper skill and diligence. Since a variety of potential opportunities for negligence existed in the instant case, it is arguable that *res ipsa loquitur* was appropriate to raise an inference of negligence as to conduct which was not included within Dr. Trangsrud's conclusions. On the other hand, if Dr. Trangsrud's evidence is deemed to be so broad as to constitute direct proof of the only kinds of negligence which might reasonably have been attributed to Dr. Smirl, then the instruction on *res ipsa loquitur* would have been redundant.

In *Lee v. Milwaukee Gas Light Co.* (1963), 20 Wis. (2d) 333, 340, 122 N. W. (2d) 374, it was said with reference to *res ipsa loquitur:*

"Specific elements of negligence not reaching the point of a *prima facie* case which is overcome by other evidence may be supported by the application of the doctrine. . . ."

The same approach was also expressed in *Brunner v. Van Hoof* (1958), 4 Wis. (2d) 459, 464, 90 N. W. (2d) 551:

"When specific acts of negligence are shown making a *prima facie* case by the plaintiff and the inference of negligence is met and overcome by the evidence on the part of the defendant the doctrine of *res ipsa loquitur* is not applicable."

One of the problems presented by the foregoing quotations is that it is difficult for the trial judge to determine in advance of the jury's rendition of its verdict whether the proof has been in fact "overcome." This court is now of the opinion that the two expressions immediately above quoted should be withdrawn.

When proof of negligence is offered, the trial judge, in contemplating the instructions which he will give to the jury, must evaluate the testimony to determine if there has been such substantial proof of negligence as to render superfluous the giving of an instruction on *res ipsa loquitur*. Sometimes the question as to the adequacy of the proof of negligence will be a close one; it will be within the sound discretion of the trial judge to determine whether the giving of the instruction will be redundant.

We subscribe to the following comment of Dean Prosser:

". . . the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur." Prosser, Law of Torts (3d ed.), ch. 6, p. 236, sec. 40.

In any event, in the instant case, it was not an abuse of discretion for the trial court to have given the *res ipsa loquitur* instruction. ·

### Vicarious Liability.

The appellant objects to the fact that under the court's instruction he was held responsible for the negligence which

may have been chargeable to Dr. McDonnell. During the course of its deliberations, the jury returned to the courtroom and asked for further instructions relative to Dr. Smirl's responsibility for the care given the patient by Dr. McDonnell. The court responded as follows:

"You are instructed, Members of the Jury, that it was the duty of Dr. McDonnell to exercise the same degree of care and skill in his treatment and in his surgery upon Oscar Fehrman as was required of Dr. Smirl, and that Dr. Smirl would be responsible for any failure upon the part of Dr. McDonnell to exercise such care and skill."

The trial court had previously given an instruction relative to the extent of Dr. Smirl's responsibility. It was couched in different words but was nevertheless consistent with the above-quoted language. Upon the first appeal, this court asserted the following in a footnote at page 26:

"The trial court properly instructed the jury as follows: 'You are instructed that the responsibility of the defendant, Dr. Smirl, to the plaintiff, Oscar A. Fehrman, for malpractice, if any, continued throughout the period of the second operation and the subsequent period during which the defendant treated the plaintiff as his physician and surgeon.' This is because Dr. Smirl continued in active charge of Fehrman during and after the second operation. See *Morrill v. Komasinski* (1950), 256 Wis. 417, 426, 41 N. W. (2d) 620."

In the first trial, Dr. Smirl conceded that he was in charge of Mr. Fehrman during both operations and was professionally responsible for his care during such periods. No such evidence, however, was adduced upon the second trial. Since the facts adduced at the first trial were not to be the "law of the case" upon the second trial (as has been discussed earlier in this opinion), we are not entitled to bind Dr. Smirl by his testimony at the first trial. At the second trial, Dr. Smirl did not deny the admissions made

by him at the first trial; he was simply not questioned with respect to them.

Dr. Smirl arranged to have Dr. McDonnell participate in the treatment of Mr. Fehrman after the first operation. When the need for a second operation arose, Mr. Fehrman signed a document entitled "consent to operation," which gave authority to Dr. McDonnell "and whomever he may designate as his assistants" to perform a cystotomy. Although respondents' counsel has denominated a cystotomy as "merely a diagnostic procedure," it is clear that counsel is in error and that the cystotomy in fact involves the actual incision of the urinary bladder.

Dr. Smirl was present at the second operation, although the "operative record" indicates that Dr. McDonnell was acting as surgeon and Dr. Smirl as his assistant. The testimony of Dr. Smirl indicates that he was closely attentive to the second operation and in fact inserted his finger into the surgical opening.

The problem of holding one medical doctor liable for another's conduct has often received judicial attention. This court has considered the problem in a number of cases: *Morrill v. Komasinski* (1950), 256 Wis. 417, 426, 41 N. W. (2d) 620; *Heimlich v. Harvey* (1949), 255 Wis. 471, 474, 39 N. W. (2d) 394; *Mayer v. Hipke* (1924), 183 Wis. 382, 389, 197 N. W. 333. An annotation on the subject appears at 85 A. L. R. (2d) 889. See also 41 Am. Jur., Physicians and Surgeons, pp. 225, 226, sec. 113, and 70 C. J. S., Physicians and Surgeons, pp. 977, 978, sec. 54c.

The courts appear to be divided regarding the question of the responsibility of one physician for the negligence of another. Some courts have held that a physician who has advised his patient that an operation should be performed by another is not to be held liable for the surgeon's negligence; in some of the cases the physician not only selected the surgeon but was either present or assisted in some way

at the operation. *Brossard v. Koop* (1937), 200 Minn. 410, 274 N. W. 241; *Shannon v. Ramsey* (1934), 288 Mass. 543, 193 N. E. 235; *Beckwith v. Boynton* (1924), 235 Ill. App. 469; *Robinson v. Crotwell* (1911), 175 Ala. 194, 57 So. 23; *Brown v. Bennett* (1909), 157 Mich. 654, 122 N. W. 305.

On the other hand, there are a number of courts which have held that the one physician is a joint tort-feasor with the other and is liable for his negligence when there is a concert of action and a common purpose existing between the two doctors. *Graddy v. New York Medical College* (1963), 19 App. Div. (2d) 426, 243 N. Y. Supp. (2d) 940; *Mutschman v. Petry* (1933), 46 Ohio App. 525, 189 N. E. 658; *Voter v. Newsalt* (1929), 58 N. D. 154, 225 N. W. 74; *Bolles v. Kinton* (1928), 83 Colo. 147, 263 Pac. 26, 56 A. L. R. 814; *Manley v. Coleman* (1924), 19 Ohio App. 284.

To the writer of this opinion, it would appear reasonably clear from the record of the second trial that Dr. McDonnell was in charge of the second operation rather than Dr. Smirl. To hold that Dr. Smirl (the assistant) is liable for the negligence of Dr. McDonnell (the surgeon in charge) would seem to be the application of a novel doctrine of *respondeat inferior*. However, the majority of the court is persuaded that, under the circumstances of this case, Dr. Smirl either was in charge of the patient or was acting jointly with Dr. McDonnell. Accordingly, the court concludes that it was proper for the trial judge to instruct the jury as he did on the question of vicarious liability.

### *Additional Instructions to the Jury.*

After the jury commenced its deliberations, it returned with a request for additional instructions. The court responded to the inquiries, and the appellant contends that this gave undue emphasis to the specific matters which were so

covered. We do not regard the trial court's response to the jury's request for additional instructions as overemphasizing the matters inquired about. In *Olson v. Siordia,* ante, p. 274, 130 N. W. (2d) 827, we recently noted the breadth of the trial court's discretion when a request for reinstruction is made by a jury.

The appellant also complains that the trial court "ad-libbed" the instructions and did not repeat them in the exact words which were used in the original instructions. Our examination of the additional instructions satisfies us that they were correct, and we know of no necessity for their being framed in the precise words which the judge had earlier used.

### *Excluding the Damage Issue.*

In ordering the new trial, this court, at page 28 of its previous opinion, expressly excluded retrial of the damage issue. The appellant now argues that the issues of damages and negligence are so closely interrelated in the instant case that it is impossible to sever one from the other; to do so, it is urged, is to give the injured party an unfair advantage.

This court has on a number of occasions excluded the damage issue when ordering a new trial. See, for example, *Leusink v. O'Donnell* (1950), 257 Wis. 571, 574, 44 N. W. (2d) 525, and *Behling v. Posorske* (1920), 172 Wis. 608, 613, 179 N. W. 738.

On the second trial, it was necessary for the trial court to permit testimony as to the nature of Mr. Fehrman's physical condition. This was not received for the purpose of proving his damages but rather for the separate and entirely proper purpose of attempting to show that there had been malpractice committed upon him. We conclude that there was no error on the retrial in excluding the issue of damages. The damages awarded in the first trial were fair,

and there was no suggestion of dissatisfaction with the damages upon the original appeal.

### Previous Conviction of Crime.

Dr. Smirl was asked whether he had ever been convicted of a crime, and he responded in the affirmative, adding that it was a misdemeanor. No further questioning on this subject was conducted by either side. In his instructions to the jury, the trial judge informed the jurors that in weighing Dr. Smirl's testimony they were entitled to take into consideration the fact that he had been so convicted of a misdemeanor. The court went on to point out, however, that the conviction did not disqualify him as a witness. The appellant complains that the instruction was improper, claiming that most misdemeanors do not in any way affect a person's credibility.

The instruction as given by the trial court constituted an accurate statement of the law. If the nature of the misdemeanor had been shown to be one which obviously would not affect the witness' credibility (*e.g.,* a driving offense), it would have been proper for the trial court to have refused to have given this instruction. In the instant case, however, Dr. Smirl's counsel did not see fit to have the witness identify the misdemeanor. Accordingly, it was entirely appropriate for the trial court to instruct the jury concerning the impeaching characteristics of a previous conviction.

### Computation of Interest.

After the second trial, the Fehrmans were permitted to include interest in their bill of costs dating back to the verdict of the first trial. Since the first trial ended in a judgment in favor of Dr. Smirl, his counsel now urges that interest should run only from the date of the second verdict, since that verdict was the only one in favor of the Fehrmans.

Sec. 271.04 (4), Stats., provides that, "When the judgment is for the recovery of money, interest at the legal rate from the time of verdict, . . . until judgment is entered shall be computed by the clerk and added to the costs." When a defendant prevails in the first trial and loses in the second trial, it is arguable that interest against him should not begin to run until after the adverse verdict. On the other hand, the injured party's damages become liquidated with the verdict in the first trial.

The court considered a closely related problem in *Zeidler v. Goelzer* (1926), 191 Wis. 378, 389, 211 N. W. 140, and concluded that interest was properly computed from the date of the verdict in the first trial, since the damages became liquidated at that time. Cf. *Wendt v. Fintch* (1940), 235 Wis. 220, 227, 292 N. W. 890. In the *Zeidler Case,* the verdict of the first trial was in favor of the plaintiff; nevertheless, we agree with the trial judge that this distinction is not controlling.

The damages were liquidated after the first trial, and it was theoretically possible for a tender to have been made. *Smith v. Atco Co.* (1959), 6 Wis. (2d) 371, 395, 94 N. W. (2d) 697. We recognize that a defendant, victorious at the first trial, would scarcely contemplate a tender of damages; however, it does not follow that upon an ultimate loss of the case such defendant is protected from the burden of paying interest on the previously ascertained damages. This is especially true when, as here, no question of damages was involved upon the second trial.

### *Conclusion.*

In the opinion of the court, there were no prejudicial errors committed upon the retrial. Further, the appellant's request for a new trial in the interests of justice under sec. 251.09, Stats., must be denied.

*By the Court.*—Judgment affirmed.

HALLOWS, J. (*concurring*). While we are again restating the applicability of the *res ipsa loquitur* doctrine, I would prefer the articulation to be a bit more certain than what is now offered.

The oft-quoted statement of the doctrine as stated by Chief Justice ERLE in 1865 in *Scott v. London St. Katherine Docks Co.* 3 Hurl. & C. 594 (*596), is:

"But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

This statement in substance is cited in Prosser, Law of Torts (3d ed.), ch. 6, p. 218, sec. 39, and the headnote based on the statement has been cited with approval by the court in *Kirst v. Milwaukee, L. S. & W. R. Co.* (1879), 46 Wis. 489, 492, 1 N. W. 89; *Cummings v. National Furnace Co.* (1884), 60 Wis. 603, 612, 18 N. W. 742, 20 N. W. 665; and in *Dunham v. Wisconsin Gas & Electric Co.* (1938), 228 Wis. 250, 256, 280 N. W. 291. The two elements requisite for the application of the doctrine in Wisconsin were extensively discussed in *Turk v. H. C. Prange Co.* (1963), 18 Wis. (2d) 547, 119 N. W. (2d) 365. The rule has long been considered to be in the nature of a permissive inference to be drawn from circumstantial evidence in situations where it is more probable the injury was caused by some negligence of the defendant than that it was not. *Lipsky v. C. Reiss Coal Co.* (1908), 136 Wis. 307, 117 N. W. 803; *Turk v. H. C. Prange Co., supra; Koehler v. Thiensville State Bank* (1944), 245 Wis. 281, 14 N. W. (2d) 15.

When the rule is applicable to a given case is the subject of conflict in the cases. In *Brunner v. Van Hoof* (1958), 4 Wis. (2d) 459, 464, 90 N. W. (2d) 551, we pointed

out, ". . . the doctrine may be applied in cases where evidence of specific negligence is introduced" and attempted to state when the doctrine was inapplicable in terms of a *prima facie* case. When evidence of specific acts of negligence reaches the point where a *prima facie* case is made, it is erroneous for the trial court to give an instruction to the jury that it is permissible for it to draw an inference of general negligence from the fact that an injury has occurred. *Brunner v. Van Hoof, supra,* so held.

The majority opinion states this concept in terms of a determination of "such substantial proof of negligence as to render superfluous the giving of an instruction on *res ipsa loquitur*." But what is substantial and when is the doctrine superfluous or redundant is not explained. These terms are new in the literature on the doctrine of *res ipsa loquitur*. The only time giving an instruction on *res ipsa loquitur* would be superfluous or redundant is when the jury unaided by the doctrine may properly in its reasoning process conclude from the evidence of specific acts that the defendant was negligent in that specific respect. When the evidence of negligence is "substantial" enough to permit this, a *prima facie* case has been made and the plaintiff is entitled to go to the jury and neither public policy nor necessity can justify the application of the doctrine. The terms "substantial," "superfluous," and "redundant" are only meaningful in terms of whether the plaintiff without the aid of the application of the doctrine is entitled to go to the jury, and in that case the inference of general negligence or negligence in no specific respect is ruled out as being inconsistent with the proved specific negligence.

The quotation accepted by the majority from Prosser impliedly supports this rule because evidence of specific negligence which furnishes a full and complete explanation of the occurrence destroys the inference of general negligence inferred from the fact that the injury has occurred.

This court in *Commerce Ins. Co. v. Merrill Gas Co.* (1955), 271 Wis. 159, 168, 72 N. W. (2d) 771, stated:

"Should their attempt to prove specific negligence on defendant's part be unsuccessful, or should their introduction of evidence of specific negligence fail to establish the precise cause of the damage claimed, they will not as a result be deprived of the benefits available to them under the doctrine of *res ipsa loquitur.*"

Conversely, the effect of being "unsuccessful" in making a *prima facie* case on specific negligence is stated in Anno. 33 A. L. R. (2d) 791, 803, Res Ipsa Loquitur—Availability:

"In several cases recognizing the general rule that an unsuccessful attempt by the plaintiff to prove specific acts of negligence does not deprive him of the benefits of res ipsa otherwise available, the view has been taken that where the plaintiff's evidence of specific negligence is sufficient to raise an issue for the jury or to make a prima facie case, the plaintiff's 'attempt' to prove specific negligence can no longer be regarded as 'unsuccessful,' and the jury should not be permitted to consider any inference or presumption arising from res ipsa."

In the instant case I do not consider the evidence much more than sufficient to qualify the facts by an expert for the application of the doctrine and certainly not as amounting to a *prima facie* case on specific negligence.

I am authorized to state Mr. Justice WILKIE joins in this concurring opinion.