Joseph FIUMEFREDDO and Karen Fiumefreddo, Plain-
tiffs-Appellants

v.

Thomas MCLEAN, M.D., George B. Haasler, M.D., and
Milwaukee County, a political division, Defendants-
Respondents.†

Court of Appeals

*No. 91-2264. Submitted on briefs December 2, 1992.—Decided
January 26, 1993.*

(Also reported in 496 N.W.2d 226.)

† Petition to review denied.

11

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs *David A. Saichek* of *Saichek & Hertel, S.C.,* with *Theodore B. Hertel, Jr.,* of counsel, of Milwaukee.

On behalf of the defendant-respondent George B. Haasler, M.D., the cause was submitted on the briefs of

*Michael J. Pfau* and *Susan R. Tyndall* of *Hinshaw & Culbertson* of Milwaukee.

On behalf of the defendants-respondents Thomas McLean, M.D., and Milwaukee County, the cause was submitted on the briefs of *Robert E. Andrews* and *John F. Jorgensen* of *Office of Corporation Counsel* of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

FINE, J. This is an action to recover damages as the result of alleged medical malpractice during the course of an operation to remove Joseph Fiumefreddo's thymus gland. The gland was removed in an attempt to treat Fiumefreddo's myasthenia gravis, a severely debilitating neurologic disease. The operation was performed by George B. Haasler, M.D., and Thomas McLean, M.D. Fiumefreddo's recurrent laryngeal nerve was damaged during the operation, and, as a result, one of his vocal cords was permanently paralyzed. Fiumefreddo appeals the judgments entered on a jury verdict finding both Dr. Haasler and Dr. McLean not negligent.

Fiumefreddo raises three issues on this appeal. First, he contends that the trial court erred in not instructing the jury on *res ipsa loquitur.* Second, he asserts that the trial court erred in not submitting to the jury his version of the special verdict form. Third, he seeks a new trial because, in his view, the jury's verdict reflected juror prejudice. We reverse on the first issue, and remand for a new trial.

## I.

Dr. Haasler was the surgeon in charge of Fiumefreddo's thymectomy, and Dr. McLean, a resident,

14

assisted. Both physicians participated in the operation. The doctors were unable to say how much of the operation they each performed, although they agreed that Dr. Haasler did most of the traction, and Dr. McLean did most of the dissection.[1] They each did some of the cautery work, but neither Dr. Haasler nor Dr. McLean indicated who did the most.[2] Dr. McLean testified that Dr. Haasler, as the surgeon in charge, was responsible for what both of them did, describing it as a "normal relationship in a residency program." Unbeknownst to Dr. Haasler, Fiumefreddo's thymectomy was Dr. McLean's first such operation.

Fiumefreddo's medical expert testified that "injury to the recurrent laryngeal nerve should not occur" during a thymectomy if surgeons adhere to the applicable standard of care. The medical expert also opined that because the recurrent laryngeal nerve was injured in the operation, he believed that Drs. Haasler and McLean deviated from that standard of care, and that the deviation was a cause of Fiumefreddo's paralyzed vocal cord. As between Dr. Haasler and Dr. McLean, Fiumefreddo's medical expert testified that the surgeon who used cautery most frequently and [the] one who did most of the traction would be more likely to have injured Fiumefreddo's recurrent laryngeal nerve. No witness,

---

[1] "Traction," as explained by Dr. Haasler, is using "tweezers or forceps to pick up tissues and therefore put them on a little stretch so that you can cut between the two forceps." Dr. Haasler further explained that the technique is usually done with the forceps very close together on the order of about half an inch or less to expose these tissues that are at a very small level."

[2] Cautery is used to stop bleeding during an operation. As Fiumefreddo's medical expert testified, it is "essentially burning a very small amount of tissue around the bleeding tissue, and this produces clotting of the blood and seals the bleeding."

however, pointed to any specific act by either surgeon that caused damage to Fiumefreddo's recurrent laryngeal nerve.

As noted, the jury found that neither Dr. Haasler nor Dr. McLean was negligent. Instructed to answer the damages questions on the special-verdict form irrespective of its answer to the questions on liability, the jury set Fiumefreddo's damages as follows: $27,000 for pain, suffering, and disability from February 2, 1988, the date of the surgery, to "the date of the trial";[3] nothing for future pain, suffering, and disability; nothing for loss of earning capacity from the date of the surgery to the date of the trial; nothing for loss of future earning capacity; and $4,000 for future psychological treatment.

## II.

A. *Res ipsa loquitur.*

■

Fiumefreddo asked the trial court to read to the jury Wis J I—Civil 1024, the standard instruction on *res ipsa loquitur* in medical-malpractice cases.[4] As Wis J

---

[3] The trial started on June 24, 1991. The jury returned its verdict on July 1, 1991.

[4] Wis J I—Civil 1024 provides:

> If you find that (name the part of the body that was injured) of (plaintiff) was injured during the course of the operation performed by (Dr.———) and if you further find (from expert medical testimony in this case) that the injury to the (name the part of the body that was injured) (plaintiff) is of a kind that does not ordinarily occur if a surgeon exercises proper care and skill, then you may infer, from the fact of surgery to the (name the part of the body that was injured) of (plaintiff), that (Dr.———) failed to exercise that degree of care and skill which surgeons usually exercise. This rule will not apply if (Dr.———) has offered an explanation for the injury to the (name the part of the body that was injured) of (plaintiff) which

I—Civil 1024 indicates, application of *res ipsa loquitur* permits an inference, which the jury may or may not accept, that the defendant's negligence caused plaintiff's injuries. *See University Dodge, Inc. v. Drott Tractor Co.*, 55 Wis. 2d 396, 401, 198 N.W.2d 621, 623 (1972); *Beaudoin v. Watertown Memorial Hospital*, 32 Wis. 2d 132, 138-140, 145 N.W.2d 166, 169-170 (1966). The instruction should be given in a medical-malpractice action if the following conditions are met:

> (a) either a layman is able to determine as a matter of common knowledge or an expert testifies that the result which occurred does not ordinarily occur in the absence of negligence, (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant, and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event.

*Lecander v. Billmeyer*, 171 Wis. 2d 593, 601–602, 492 N.W.2d 167, 170–171 (1992). Whether these conditions are met is a legal issue that we determine *de novo. Id.*, 171 Wis. 2d at 602, 492 N.W.2d at 171.

As we have seen, Fiumefreddo's medical expert testified that "injury to the recurrent laryngeal nerve should not occur" during a thymectomy if surgeons adhere to the applicable standard of care. Additionally, both Dr. Haasler and Dr. McLean admitted, as did their expert witness, that there should be no injury to the recurrent laryngeal nerve if the traction is properly done. Part "a" of the three-part test enunciated by *Lecander* is thus met. Contrary to the conclusion of the trial court,

---

satisfies you that the injury to (plaintiff) did not occur through any failure on (Dr.———)'s part to exercise due care and skill.

██

we also believe that part "c" of the *Lecander* test has been satisfied.[5]

At the instructions conference, counsel for Dr. Haasler argued that "the substantive case law in the State of Wisconsin is quite clear that once you put in the evidence that the act is negligence, then you don't have res ipsa." The trial court's conclusion did not extend that far. Rather, it determined that a *res ipsa loquitur* instruction was not warranted in this case because "there is substantial evidence of actual specific act [*sic*] of negligence and where the defense has rebutted those through evidence presented." Although we give deference to this aspect of the trial court's *res-ipsa-loquitur* analysis to the extent that it depends on the trial court's assessment of the evidence, *see Fehrman v. Smirl*, 25 Wis. 2d 645, 653, 131 N.W.2d 314, 318 (1964), we believe that the trial court misconstrued the applicable law.

An instruction on *res ipsa loquitur* is not appropriate where there is "substantial proof of negligence"—that is, where a mechanism of injury is shown. *Fehrman*, 25 Wis. 2d at 653, 131 N.W.2d at 318. Stated another way, "the doctrine of res ipsa loquitur should not be applied where the specifics of an event can be *completely explained.*" *Lecander*, 171 Wis. 2d at 604, 492 N.W.2d at 171. (Emphasis added.) In *Lecander*, the specific act alleged to be negligent was the attempted blind nasal intubation of a patient about to undergo surgery. *Id.*, 171 Wis. 2d at 596–599, 492 N.W.2d at 168–169. Here, in contrast, no specific injury-causing act by either Dr. Haasler or Dr. McLean was shown. Neither the parties nor the trial court pointed to specific acts

---

[5] We discuss part "b" of the *Lecander* test after our analysis of part "c"

that "completely explained the injury."[6] The trial court's finding that evidence was presented that evinced specific acts of negligence was, accordingly, clearly erroneous. *See* Rule 805.17, Stats. (trial court's findings of fact may not be set aside on appeal unless clearly erroneous). Testimony that Fiumefreddo's injury would not have occurred had the traction and cautery procedures been conducted in accord with the applicable standard of care, and the impossibility of Fiumefreddo being able to show a specific act of negligence, makes this a classic *res ipsa loquitur* case. Since it is undisputed but that Fiumefreddo's recurrent laryngeal nerve was injured during the course of the operation, part "c" of the *Lecander* test was fulfilled. We now turn to part "b."

Part "b" of the test articulated in *Lecander* recognizes that a *res ipsa loquitur* instruction is not appropriate unless "the agent or instrumentality causing the harm is within the exclusive control of the defendant." 171 Wis. 2d at 602, 492 N.W.2d at 170–171. Here, of course, we have *two* defendants, either or both of whom could have caused the damage to Fiumefreddo's recurrent laryngeal nerve. The question of whether *res ipsa loquitur* applies in such a situation has not been squarely decided in this state. There are only two Wisconsin decisions that touch upon the issue: *Beaudoin, supra,* and *Hoven v. Kelble,* 79 Wis. 2d 444, 256 N.W.2d 379 (1977).

*Beaudoin* was a medical-malpractice case brought by a woman who was burned during the course of an

---

[6] Thus, for example, the defendants' medical expert was asked this question, and responded with this answer:

Q. You cannot say to a reasonable degree of medical probability what caused this injury to the recurrent laryngeal nerve, can you?

A. No, I can't.

operation. 32 Wis. 2d at 134-135, 145 N.W.2d at 167. She sued the surgeon and the hospital. *Ibid.* The plaintiff was unable to identify the cause of her injury, and, after conclusion of her case-in-chief, the trial court granted the defendants' motion for a nonsuit. *Id.*, 32 Wis. 2d at 135, 137-138, 145 N.W.2d at 168-169. The supreme court reversed, holding that the *res ipsa loquitur* doctrine relieved her "of the almost impossible onus of having to identify the precise instrumentality which caused injury." *Id.*, 32 Wis. 2d at 138, 145 N.W.2d at 169.

*Hoven* was a medical-malpractice case where the plaintiff alleged that one or both of the physicians named as defendants were responsible for injuries he sustained while undergoing surgery. *See id.*, 79 Wis. 2d at 446, 256 N.W.2d at 380. The court determined that, for demurrer purposes, *res ipsa loquitur* could be pleaded in the alternative, but specifically declined to rule whether the plaintiff could rely on *res ipsa loquitur* at trial. *Id.*, 79 Wis. 2d at 448-455, 455 n.5, 256 N.W.2d at 381-384, 384 n.5. Significantly, however, *Hoven* appears to read *Beaudoin,* and *Ybarra v. Spangard,* 154 P.2d 687 (Cal. 1944), upon which *Beaudoin* relied, to require that the injured patient/plaintiff be under the collective control of all the defendants against whom application of the *res ipsa loquitur* doctrine is sought. *Hoven*, 79 Wis. 2d at 455 n.5, 256 N.W.2d at 384 n.5.[7]

---

[7] *Ybarra* was a medical-malpractice case that sought damages for injuries sustained during the course of an operation. 154 P.2d at 688. Reversing the trial court's grant of a nonsuit, the Supreme Court of California permitted application of *res ipsa loquitur* even though the plaintiff was not under the exclusive control of any one defendant during the operation, and could not point to the cause of his injury. *Id.*, 154 P.2d at 690-691. Noting that the plaintiff was unconscious during the time he was injured

Although that element is present here—Fiumefreddo was under the "collective control" of Drs. Haasler and McLean neither *Beaudoin* nor *Hoven* is dispositive of this case.

As noted, *res ipsa loquitur* only raises an inference of negligence, *Beaudoin*, 32 Wis. 2d at 138-140, 145 N.W.2d at 169-170. The doctrine "is merely an evidentiary rule and does not create any new or different type of rights," *University Dodge*, 55 Wis. 2d at 401, 198 N.W.2d at 623. Simply stated, "the principal inquiry is still negligence." *Koenig v. Milwaukee Blood Center*, 23 Wis. 2d 324, 332, 127 N.W.2d 50, 54 (1964). Causation, the central focus of part "b" of the *Lecander* test, is, of course, a critical element of any tort claim. *See Erickson v. Prudential Property and Casualty Co.*, 166 Wis. 2d 82, 88, 479 N.W.2d 552, 554 (Ct. App. 1991). We thus turn to general tort principles in analyzing whether part "b" of the *Lecander* test is satisfied.

When the negligence of two or more persons combine to cause injury, they are jointly and severally liable to the plaintiff. *Johnson v. Heintz*, 73 Wis. 2d 286, 302, 243 N.W.2d 815, 826 (1976). Under such circumstances, it may very well be appropriate to shift to the defendants

---

and that it would thus be "manifestly unreasonable for [the defendants] to insist that he identify any one of them as the person who did the alleged negligent act," the court placed on the defendants the "burden of initial explanation" for plaintiff's injuries. *Ibid. Ybarra* has been described as the "watershed for cases involving the application of res ipsa loquitur against multiple defendants, especially multiple medical defendants." *See* Annotation, *Applicability of Res Ipsa Loquitur in Case of Multiple Medical Defendants—Modern Status*, 67 A.L.R.4th 544, 552 (1989).

the burden of apportioning the damage attributable to each of them. *See id.*, 73 Wis. 2d at 305, 243 N.W.2d at 827. There are times, however, when only one of the defendants may be *causally* negligent, even though the conduct of both is tortious. The RESTATEMENT sets out the general rule:

> Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which has caused it, the burden is upon each such actor to prove that he has not caused the harm.

RESTATEMENT (SECOND) OF TORTS § 433 B(3) (1964). The rule's rationale is "the injustice of permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm." *Id.*, comment f. The classic example of the rule's application is the two hunters who negligently shoot in the plaintiff's direction but the plaintiff is hit by only one bullet and cannot prove which hunter caused her injuries. *See id.*, comment h, illustration 9.

The Wisconsin Supreme Court discussed the applicability of section 433 B(3) in *Collins v. Eli Lilly Co.*, 116 Wis. 2d 166, 342 N.W.2d 37 (1984), *cert. denied*, 469 U.S. 826. *Collins* was a product-liability case brought by a woman whose cancer was caused by her mother's ingestion of DES, diethylstilbestrol, during the mother's pregnancy. *Id.*, 116 Wis. 2d at 174-175, 342 N.W.2d at 41-42. Not surprisingly, the plaintiff could not identify the company that either manufactured or marketed the specific pill taken by her mother. *Id.*, 116 Wis. 2d at 177, 342 N.W.2d at 42-43. The court, follow-

ing the lead of what it termed "commentators and courts," declined to apply the rule set out in section 433 B(3), dubbed the 'alternative liability' theory, *id.*, 116 Wis. 2d at 182-183, 342 N.W.2d at 45-46, finding it had little utility to the *Collins*-type of case, *id.*, 116 Wis. 2d at 183, 342 N.W.2d at 46. We quote at some length from *Collins* because the court's rationale in not adopting section 433 B(3) for mass toxic-drug cases underpins our decision to adopt it here, where the circumstances are entirely different.

> First, the alternative liability theory is, in part, premised on the assumption the defendants will be "in a far better position [than the plaintiff] to offer evidence to determine which one caused the injury." In this case, both the plaintiff and the defendants have problems with access to information about DES production and marketing. Second, the alternative liability theory formulation contemplates that all negligent defendants will be joined in the suit. Thus, the court can be sure that at least one of the defendants was directly responsible for the plaintiff's harm. In a DES case, however, there may be hundreds of defendants that may be liable, and, therefore, the probability that any one defendant caused the plaintiff's harm may be correspondingly small. Moreover, it may be impossible to identify all DES producers or marketers because of the fluid nature of the market over the years DES was produced or marketed for use in pregnancy. Third, the alternative liability formula does not, in its pure form, provide a fair way to apportion damages among the defendants. Under the alternative liability theory, defendants that produced or marketed small amounts of DES and those that produced or marketed large amounts would be equally liable.

*Id.*, 116 Wis. 2d at 183-184, 342 N.W.2d at 46 (citations omitted) (bracketing in original).

In this case, in contrast to the situation in *Collins,* each of the factors outlined by *Collins* supports application here of the rationale of section 433 B(3) to place the burden on each of the defendants to demonstrate that he was not a cause of Fiumefreddo's injury.

First, although Drs. Haasler and McLean testified that they were unable to determine precisely what caused the damage to Fiumefreddo's recurrent laryngeal nerve, they certainly are in a better position to know the cause than is Fiumefreddo, who was under anesthesia at the time. *See Beaudoin,* 32 Wis. 2d at 138, 145 N.W.2d at 169 (*res ipsa loquitur* appropriate in light of the fact that plaintiff "was given an anesthetic, was unconscious, and had no way of knowing what transpired" during the operation in which she was injured, and the "defendants had complete control of her body and the procedures, instruments, and agents that were used").

Second, unlike the situation in *Collins,* all of the persons who possibly could have been causally negligent in this case are defendants. Thus, "we can be sure that at least one of the defendants was directly responsible for the plaintiff's harm." *Collins,* 116 Wis. 2d at 184, 342 N.W.2d at 46.

Third, also unlike the situation in *Collins,* shifting the burden to the defendants of proving their lack of individual causation will not be unfair; they jointly performed the operation, and, at worst, they will be jointly responsible for the resulting harm.

Based on the foregoing, we conclude that the rule recognized in section 433 B(3) of the RESTATEMENT governs this case. Accordingly, for the purposes of part "b" of the *Lecander* test, it makes no difference that

Fiumefreddo was, at the time of his injury, under the exclusive medical control of more than one defendant. This result is consistent with the general law elsewhere. *See* Annotation, *Applicability of Res Ipsa Loquitur in Case of Multiple Medical Defendants—Modern Status*, 67 A.L.R.4th 544 (1989). The trial court erred in not instructing the jury on *res ipsa loquitur*. A new trial is required.

### B. *Special Verdict Form.*

Although we have determined that a new trial is required because the trial court did not instruct on *res ipsa loquitur*, we would ordinarily address the issue Fiumefreddo raises concerning the special verdict form. *See State ex rel. Jackson v. Coffey*, 18 Wis. 2d 529, 533, 118 N.W.2d 939, 942 (1963) (issues briefed may be considered if they are likely to recur on remand even though other issues are dispositive of appeal). Unfortunately, the state of the record prevents us from so doing.

The trial court submitted a special verdict to the jury that asked, in separate questions, whether either Dr. Haasler or Dr. McLean was negligent, and, again in separate questions, if negligent, whether that negligence was a cause of Fiumefreddo's injury. Fiumefreddo requested that the surgeons be joined in one question on negligence, and one question on causation. The negligence question as proposed by Fiumefreddo read:

> At or about the time of the surgery was either the defendant George Haasler, M.D. or the defendant Thomas McLean, M.D. (or both) negligent?

(Capitalization omitted.) The cause question as proposed by Fiumefreddo read:

If you answered [the negligence question] "yes", then answer this question. Was such negligence of either Dr. Haasler or Dr. McLean (or both) a cause of the plaintiff Joseph Fiumefreddo's vocal cord paralysis?

As argued in his brief on appeal, Fiumefreddo wanted the special-verdict questions phrased in the way he submitted them in order to give the "jury the opportunity to say that one of the two surgeons was negligent without being able to determine which one it was."

Formulating a special verdict is within the trial court's discretion and will be upheld on appeal "unless the inquiry, *taken with the applicable instruction,* does not fairly present the issue of fact to the jury for determination." *Carson v. City of Beloit,* 32 Wis. 2d 282, 287, 145 N.W.2d 112, 114 (1966) (emphasis added). We cannot assess the validity of Fiumefreddo's argument concerning the special-verdict question without knowing how the trial court instructed the jury.

Although the transcript of the jury-instruction conference that is a part of the appellate record reveals that the trial court agreed to use Fiumefreddo's proposed jury instruction titled "Burden When Uncertain Which of Two Defendants Caused Harm," neither that proposed instruction nor the trial court's actual instructions to the jury at the close of the case are in the appellate record.

We are bound by the record as it comes to us. *See In Matter of Guardianship of Eberhardy,* 102 Wis. 2d 539, 571, 307 N.W.2d 881, 895 (1981). The rules specifically require that the trial court's instructions to the jury be made part of the record on appeal, Rule 809.15(1)(a), (4), Stats., and it is the appellant's responsibility to insure that this is done, *State Bank of Hartland v. Arndt,* 129 Wis. 2d 411, 423, 385 N.W.2d 219, 225 (Ct.

26

App. 1986); and Rule 809.15(2), Stats. (The parties receive ten-day notice of the provisional contents of the record prior to its transmittal to the appellate court.) Additionally, when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling. *See Duhame v. Duhame*, 154 Wis. 2d 258, 269, 453 N.W.2d 149, 153 (Ct. App. 1989). We do so here, and, on that ground, affirm.

C. *Damages.*

As seen in Part II A, *supra*, we reverse the judgments entered in favor of the defendants and order a new trial, because the trial court did not instruct the jury on *res ipsa loquitur*. The question remains whether the new trial should be one on liability only or should include the issue of damages.

Fiumefreddo argues that a new trial should be ordered on all issues because of what he contends was jury prejudice as evidenced by its award of no damages for future pain, suffering, and disability even though his vocal cords are permanently paralyzed and he has a life-expectancy of some thirty-eight years. Without deciding whether the jury was in fact prejudiced, we conclude that the damages awarded "are low enough so that the new trial should include the question of damages." *Nelson v. Hansen*, 10 Wis. 2d 107, 121, 102 N.W.2d 251, 259 (1960).

*By the Court.*—Judgments reversed and cause remanded.