COURT OF APPEALS
DECISION
DATED AND FILED

December 17, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1022-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2016CF8**

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

　PLAINTIFF-RESPONDENT,

V.

ROBERT E. POCH, JR.,

　DEFENDANT-APPELLANT.

　　　　APPEAL from a judgment and an order of the circuit court for Bayfield County:  JOHN M. YACKEL, Judge.  *Affirmed*.

　　　　Before Stark P.J., Hruz and Gill, JJ.

　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

　　　　¶1　PER CURIAM.  Robert E. Poch, Jr., pro se, appeals a judgment convicting him of repeated sexual assault of a child and an order denying his

postconviction motion.[1]  On appeal, Poch argues that the circuit court erred by denying his motion seeking to suppress certain alleged custodial statements and seeking to suppress alleged coerced statements made to law enforcement.  He also argues that the court erred by denying his postconviction motion for resentencing.  For the reasons that follow, we affirm.

## BACKGROUND

¶2     Poch was charged in an amended complaint with one count each of repeated sexual assault of a child, mental harm to a child, and incest.  Poch later filed a ***Miranda***/***Goodchild***[2] motion to suppress statements he provided to Red Cliff Police Department officers.  Following two suppression hearings, the circuit court denied Poch's motion, concluding that Poch was not "in custody" for purposes of ***Miranda*** when he gave statements to the detectives.  The court also found that Poch's statements were uncoerced and voluntarily given.

---

[1] We pause to note the reason behind the age of this appeal.  In case No. 2019AP2157-CR, Poch appealed a circuit court order denying his petition for waiver of fees.  The petition related to additional transcripts for two telephone scheduling conferences and a motion hearing before the circuit court.  By order dated November 18, 2019, we held this appeal in abeyance pending disposition of the transcript appeal.

In an opinion and order dated March 8, 2022, we affirmed the circuit court's order in case No. 2019AP2157-CR.  In that decision, we noted that "the only missing transcript able to be transcribed that may be necessary to issues on appeal is that of Poch's plea hearing," but Poch did not seek to include that transcript in the appellate record.  On April 8, 2022, we notified Poch that we were proceeding "with this appeal and, on our own motion, extend[ed] the time for Poch to file a statement on transcript." *See* WIS. STAT. RULE 809.11(4) (2021-22).  Following additional extensions, Poch failed to file a statement on transcript, and we ordered that this appeal would proceed without additional transcripts.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] *See **Miranda v. Arizona***, 384 U.S. 436 (1966); ***State ex rel. Goodchild v. Burke***, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

¶3      Poch entered into a plea agreement by which he agreed to plead no contest to an amended count of repeated sexual assault of a child in violation of WIS. STAT. § 948.025(1)(d).  In return, the State agreed to dismiss and read in the remaining two counts and to recommend fifteen years of initial confinement followed by ten years of extended supervision.  Pursuant to the plea agreement, the defense remained free to argue a recommended sentence.  At a plea hearing, the circuit court accepted Poch's plea and found him guilty of the amended count of repeated sexual assault of a child.[3]

¶4      At the sentencing hearing, the State made a recommendation in accordance with the plea agreement.  In turn, Poch's trial counsel asked the circuit court to impose a sentence of eight to ten years of initial confinement followed by ten to twelve years of extended supervision.  The court then provided Poch with an opportunity to exercise his right of allocution.  Poch informed the court that he did not want to exercise that right.

¶5      The circuit court then sentenced Poch to twenty-five years of initial confinement followed by fifteen years of extended supervision.  In imposing the sentence, the court stated:

> [I]n reading the [presentence investigation report (PSI)] I was looking for Mr. Poch's voice and his remorse that we were talking about here that I heard in the arguments.  But not that Mr. Poch is required to talk to me, I was hoping to hear him explain it to me and for me to hear it with my own ears during his right of allocution … but he chose not to.
>
> I'm not going to take his silence and use it against him in any way, shape, or form[,] but I have some gaps here.

---

[3] The Honorable Robert Eaton presided over Poch's plea hearing.

¶6 Poch filed a postconviction motion for resentencing, arguing that he was denied his right to effective assistance of counsel. Poch argued that his trial counsel "improperly advised him and scared him out of exercising his right to allocution." The circuit court held a ***Machner***[4] hearing, during which Poch and his trial counsel testified. In an oral ruling, the court denied the motion, finding that Poch's trial counsel did not perform deficiently by advising Poch not to exercise his right of allocution. Poch now appeals.

## DISCUSSION

### I. Motion to suppress statements

¶7 Poch first challenges the circuit court's decision to deny his motion to suppress the statements he gave to law enforcement. He again argues that he was in custody when questioned by law enforcement, and that they were required, but failed, to provide him ***Miranda*** warnings. He also again argues that his statements were involuntarily given under ***Goodchild***.[5] "Whether evidence should be suppressed is a question of constitutional fact." ***State v. Rejholec***, 2021 WI App 45, ¶16, 398 Wis. 2d 729, 963 N.W.2d 121 (citation omitted). "We review a circuit court's findings of historical fact under a clearly erroneous standard and apply constitutional principles to those historical facts independently." ***Id.***

---

[4] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[5] Poch failed to file a reply brief or a statement that he would not be doing so as required by WIS. STAT. RULE 809.19(4)(a). We could treat this failure as a concession to the arguments made in the State's brief. *See **Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). Nonetheless, we will address each of Poch's arguments.

A. *Miranda*

¶8 The Fifth Amendment to the United States Constitution, applicable to Wisconsin through the Fourteenth Amendment, provides that "[n]o person … shall be compelled in any criminal case to be a witness against" themselves.[6] *See* U.S. CONST. amends. V, XIV. In order to protect this right, the United States Supreme Court held in *Miranda* that no suspect may be subjected to "custodial interrogation" until he or she is "warned that he [or she] has a right to remain silent, that any statement he [or she] does make may be used as evidence against him [or her], and that he [or she] has a right to the presence of an attorney, either retained or appointed." *See Miranda*, 384 U.S. at 444.

¶9 "Custody" is a necessary perquisite to requiring *Miranda* protections. *State v. Dobbs*, 2020 WI 64, ¶53, 392 Wis. 2d 505, 945 N.W.2d 609. If Poch was not in custody, then he is not entitled to have his subsequent statements suppressed under *Miranda*. *See State v. Lonkoski*, 2013 WI 30, ¶24, 346 Wis. 2d 523, 828 N.W.2d 552. "A person is in custody for *Miranda* purposes if 'there is a formal arrest or restraint on freedom of movement of a degree associated with a formal arrest.'" *Dobbs*, 392 Wis. 2d 505, ¶53 (citation omitted). Stated another way, we consider whether "a reasonable person would not feel free to terminate the interview and leave the scene." *Lonkoski*, 346 Wis. 2d 523, ¶27.

---

[6] Our state supreme court has previously held that "[t]he state constitutional right against compulsory self-incrimination is textually almost identical to its federal counterpart." *State v. Jennings*, 2002 WI 44, ¶40, 252 Wis. 2d 228, 647 N.W.2d 142. "Where 'the language of the provision in the state constitution is virtually identical to that of the federal provision or where no difference in intent is discernible, Wisconsin courts have normally construed the state constitution consistent with the United States Supreme Court's construction of the federal constitution.'" *State v. Cummings*, 2014 WI 88, ¶46 n.13, 357 Wis. 2d 1, 850 N.W.2d 915 (citation omitted).

¶10 Our custody analysis is an "objective test," and it requires an examination of the totality of the circumstances using factors including "the defendant's freedom to leave; the purpose, place, and length of the interrogation; and the degree of restraint." *Dobbs*, 392 Wis. 2d 505, ¶54 (citation omitted). A consideration of the degree of restraint used should include "whether the suspect is handcuffed, whether a weapon is drawn, whether a frisk is performed, the manner in which the suspect is restrained, whether the suspect is moved to another location, whether questioning took place in a police vehicle, and the number of officers involved." *Id.* (citation omitted). The State bears the burden of proving by a preponderance of the evidence that a defendant was not in custody. *See State v. Harris*, 2016 WI App 2, ¶9, 366 Wis. 2d 777, 874 N.W.2d 602 (2015), *aff'd*, 2017 WI 31, 374 Wis. 2d 271, 892 N.W.2d 663.

¶11 The facts underlying the motion to suppress are undisputed. Officer Christopher Benton testified that he and Officer Kyle Cadotte, both with the Red Cliff Police Department, went to Poch's residence to discuss an allegation of child abuse with Poch. The officers arrived separately at Poch's residence at around 6:30 p.m. and asked Poch if he would accompany them to the police station to discuss the allegations.[7]

---

[7] Discs containing an audio recording of Officer Benton's interaction with Poch, an audio recording from inside an interview room, and a video from inside the interview room were introduced and admitted into evidence at the suppression hearing. The circuit court later admitted a combined audio transcript of the audio recordings. The discs are not included in the record before this court. "We are bound by the record as it comes to us." *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26, 496 N.W.2d 226 (Ct. App. 1993). Our appellate rules dictate that video and audio recordings in disc format be made part of the record on appeal, and it is the appellant's responsibility to ensure that this is done. *See id.* at 26-27; WIS. STAT. RULE 809.15(1)(a)9. "[W]hen an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the [circuit] court's ruling." *Fiumefreddo*, 174 Wis. 2d at 27.

¶12    Without objection, Poch accompanied the officers in the backseat of Officer Benton's squad car to the police station, which was approximately a five-minute drive from Poch's residence.  Benton testified that he gave Poch a ride to the police station because Poch "did not have transportation at the time."  Prior to leaving Poch's residence, "Officer 2"[8] twice informed Poch that he was not under arrest.  Poch was not searched or placed in handcuffs, and, during the ride to the police station, Benton did not question Poch about the allegations.

¶13    Upon arriving at the police station, Officer Benton "escorted" Poch into the interview room, which was roughly twelve by fourteen feet in size.  The interview began at 6:51 p.m., and the door to the room remained open.  Neither officer took out their holstered handguns at any point.

¶14    At the beginning of the interview, but prior to the officers questioning Poch about the allegations, Poch stated that his brother had told him that he did not have to "say[] anything," that he "could be quiet," and that he could "request to have [his] attorney present."  Officer 2 responded by asking if Poch was referring to his "TPT" hearing[9] the following day, to which Poch stated, "I believe something like that."  Poch added, "I was told not to say anything, because anything that comes out of [my] mouth … could be used against me."  Officer 1 then replied, "Well, so can not saying anything at all.  And that's where educated

---

[8] The combined audio transcript identifies Officers Benton and Cadotte as "Officer 1" and "Officer 2."  It is unclear from the record which officer is which.

[9] The record does not reflect what the officer meant by "TPT" hearing, and neither party explains this reference in their briefings.  We assume the officer was referring to a Termination of Parental Rights (TPR) hearing.  *See* WIS. STAT. § 48.422.

7

people and non-educated people get in a confrontation." Officer 1 then informed Poch that he was not in custody and told Poch:

> You are here on your own free will, which is your cooperation. You know, the doors are open.
>
> If you don't want to talk to us, you can just say that you don't want to talk to us and you can leave. It's just that, then we get no cooperation from you. And there is also no statement from you, meaning what's probably being said by your daughter is not being challenged. That's up to you though.
>
> So I am just going to keep talking, assuming that you want to talk to me, and if you don't want to answer any questions, don't answer them. If you don't like how it is asked, I mean. But I just want to let you know that if you don't talk to me, I do not know what you have to say. Nobody will know what you have to say, if you don't talk to us.

Officers Benton and Cadotte then began questioning Poch. The interview ended just after 8:00 p.m., at which point Poch was placed under arrest.[10] At no point was Poch provided *Miranda* warnings.

¶15 In an oral ruling, the circuit court stated that it had reviewed the video of Poch's interview, portions of the two audio recordings, and the combined audio transcript outside the presence of the parties. Among other things, the court found that there was no indication that the interview room was in "a secure portion of the [police station] behind locked bars, and doors, and things like that."

---

[10] Neither officer testified as to when the interview ended. However, we assume the video and audio recordings would have supported the State's argument at the suppression hearing that Poch offered a "confession at the very end" of the interview "after about an hour or so at the [p]olice [d]epartment." *See Fiumefreddo*, 174 Wis. 2d at 27; *supra* note 7. Moreover, the criminal complaint stated that the interview lasted until 8:05 p.m. *See State v. Gaines*, 197 Wis. 2d 102, 106 n.1, 539 N.W.2d 723 (Ct. App. 1995) ("When reviewing a suppression order, an appellate court is not limited to examination of the suppression hearing record.").

Ultimately, the court determined that no "individual would have thought that they would have been arrested" during the course of the interview.

¶16    On appeal, and citing his trial counsel's argument from the suppression hearing, Poch appears to argue that he was in custody because: the officers interviewed him at the police station; he was transported there in Officer Benton's squad car; he was improperly dressed to walk home in winter conditions if he wanted to leave the police station; and the police station had a confusing layout.

¶17    We agree with the circuit court and the State that, based on the totality of the circumstances, the State met its burden to prove by a preponderance of the evidence that Poch was not in custody for purposes of *Miranda* because a reasonable person would have felt free to terminate the interview and leave the police station at any time.

¶18    At the outset, we acknowledge that the "purpose" of the interview was to obtain statements from Poch and that the "place" of the interview was a police station. As to the former, the interview was held after an allegation of child abuse was made against Poch, and many of the questions directed at Poch focused on whether that allegation was true. Nevertheless, "*Miranda* warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect'" of a crime. ***State v. Bartelt***, 2018 WI 16, ¶33, 379 Wis. 2d 588, 906 N.W.2d 684 (citation omitted).

¶19    Moreover, the remaining circumstances require a conclusion that Poch was not in custody. Although Poch was transported to the police station in Officer Benton's squad car, the ride lasted approximately five minutes, and Poch rode in Benton's squad car only because his vehicle was not working at the time.

¶20    In addition, Poch was informed on several occasions—both before he went with the officers to the police station and after the interview began—that he was not under arrest, was speaking with the officers of his own accord, and was free to leave. Poch was not frisked, searched, or handcuffed at any time prior to his ultimate arrest after his confession, and the interview room's door remained open for the entire interview. Additionally, the officers did not display their weapons at any time, and the interview itself lasted a relatively short amount of time (approximately one hour). *See Howes v. Fields*, 565 U.S. 499, 515 (2012) (concluding that a defendant was not in custody despite being subject to questioning for approximately five to seven hours because, among other things, he was told he was free to leave and was not physically restrained).

¶21    Poch never requested to leave the squad car en route to the police station, nor did he ask to leave the interview room or inquire into obtaining transportation back to his residence. The fact that Poch generally discussed with the officers his right to remain silent and seek legal counsel is inconsequential because under all of these circumstances a reasonable person would have felt free to terminate the interview and leave the police station at any time. *See McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991) (stating that the Court has "never held that a person can invoke his [or her] *Miranda* rights anticipatorily, in a context other than 'custodial interrogation'"). Accordingly, Poch was not "in custody" for purposes of the Fifth Amendment, and the officers were not required to provide him with the procedural safeguards outlined in *Miranda*.

B. *Goodchild*

¶22    Despite the fact that Poch was not subject to a custodial interrogation, the Fifth Amendment to the United States Constitution still requires

10

"that a confession be voluntary to be admitted into evidence." *See Rejholec*, 398 Wis. 2d 729, ¶21 (citation omitted).

> A defendant's statements are voluntary if they are the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by representatives of the State exceeded the defendant's ability to resist.

*State v. Hoppe*, 2003 WI 43, ¶36, 261 Wis. 2d 294, 661 N.W.2d 407. "'The pertinent inquiry is whether the statements were coerced or the product of improper pressures exercised by the' interrogator, which is 'a necessary prerequisite for a finding of involuntariness.'" *Rejholec*, 398 Wis. 2d 729, ¶21 (citation omitted).

¶23 Our voluntariness analysis considers "the totality of the circumstances, balancing 'the personal characteristics of the defendant against the pressures imposed upon the defendant by law enforcement.'" *Id.* (citation omitted). The relevant personal characteristics of the defendant include his or her age and intelligence, while considerations of law enforcement pressures include

> the length of the questioning, any delay in arraignment, the general conditions under which the statements took place, any excessive physical or psychological pressure brought to bear on the defendant, any inducements, threats, methods or strategies used by the police to compel a response, and whether the defendant was informed of the right to counsel and right against self-incrimination.

*Id.* (citation omitted). "When a defendant challenges the voluntariness of the statements he [or she] made to law enforcement, the State bears the burden of showing by a preponderance of the evidence that the statements were voluntary." *Dobbs*, 392 Wis. 2d 505, ¶72. Despite the State's burden, "[w]e cannot properly

label a statement involuntary unless there is 'some affirmative evidence of improper police practices deliberately used to procure a confession.'" *Id.* (citation omitted).

¶24 In its oral ruling, the circuit court concluded that Poch voluntarily gave statements to the officers. The court found that "there ha[d] been no testimony … that Mr. Poch is anything other than of average intelligen[ce]" and that Poch "appeared to be relaxed" during the interview based on the "body language of the individuals" in the video recording.

¶25 With respect to Poch's comments about potentially remaining silent and retaining an attorney, the circuit court found that it was "not too clear" whether Poch was referring to his TPR hearing the following day or to the interview. The court also found that when considered in context, Officer 1's references to "not saying anything at all" and about "non-educated people" were merely comments on the officer's opinion that if Poch "doesn't say anything to law enforcement officers they certainly would think he might be guilty … or that he actually did what the [victim] alleged to have happened." Even so, the court noted, Officer 1 followed up his statement by again informing Poch that he was under no obligation to speak with the officers and that he could leave whenever he was ready. The court also found Poch's argument about being forced to walk home in inclement weather unpersuasive, stating that Poch never expressed a desire to stop the questioning.

¶26 On appeal, citing his trial counsel's argument at the suppression hearing, Poch appears to contend that Officer 1's references to "not saying anything at all" and about "non-educated people" could have led "a reasonable lay person in that position" to believe that he or she "did not have the right to remain

silent." According to Poch, Officer 1 gave him an "anti-*Miranda*" warning rather than his entitled-to *Miranda* rights.

¶27 Upon examining the totality of the circumstances surrounding Poch's interview with the officers, we agree with the circuit court and the State that the State met its burden of proving, by a preponderance of the evidence, that Poch voluntarily provided his statements. Poch does not appear to challenge most of the court's findings, including that he seemed relaxed during the interview. To the extent that he does challenge the court's "relaxed" finding, we must assume that the missing video recording supports the court's finding. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 27, 496 N.W.2d 226 (Ct. App. 1993); *supra* note 7. In addition, and as the court found, nothing in the record demonstrates that Poch has below-average intelligence. Poch was thirty-four years old at the time of the interview, and he had graduated high school over fifteen years prior. Moreover, the court's finding that Officer 1's statements that Poch complains of were actually comments on the fact that the officers were more likely to believe the victim if Poch did not offer his side of the story is not clearly erroneous. Officer 1 never informed Poch that his silence could be used against him in legal proceedings. Regardless, immediately after making the statements, Officer 1 informed Poch that he was under no obligation to speak with the officers and that he could leave whenever he desired.

¶28 Under the facts of this case, we conclude that Poch's statements were voluntarily provided. Poch's statements were not coerced or the product of improper pressures exercised by the officers.

## II. Postconviction motion for resentencing

¶29 Lastly, Poch challenges the circuit court's decision denying his postconviction motion for resentencing based on ineffective assistance of counsel. He argues that his counsel was ineffective because she improperly advised Poch not to exercise his right of allocution. To demonstrate that counsel was ineffective, a defendant must prove both that his or her attorney's performance was deficient and that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To establish that counsel's performance was deficient, the defendant must show that it fell below 'an objective standard of reasonableness.'" *State v. Breitzman*, 2017 WI 100, ¶38, 378 Wis. 2d 431, 904 N.W.2d 93 (citation omitted).

¶30 When reviewing a claim of ineffective assistance of counsel on appeal, we review the circuit court's factual findings, including the factual circumstances of the case and trial counsel's conduct and strategy, under the clearly erroneous standard of review. *Id.*, ¶37. Ultimately, whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo. *Id.*

¶31 At the *Machner* hearing, Poch's trial counsel testified that she advised Poch not to exercise his right of allocution at sentencing. Trial counsel's reasons for that advice included that she was concerned about what Poch would say to the circuit court because he "did not come across well in the [PSI]." In particular, trial counsel had a "client service specialist" meet with Poch prior to his meeting with the author of the court-ordered PSI. The goal of the client service specialist meeting was, essentially, to assist Poch in preparing for the PSI and to "help elicit the information" that would be helpful to the defense at sentencing.

14

Nonetheless, the later-completed PSI included "a lot of … information" related to Poch's pretrial detention and, more specifically, his bail. Trial counsel testified that she and Poch repeatedly discussed his pretrial detention prior to sentencing, and she feared that he would focus on that issue if he exercised his right of allocution. Trial counsel clarified, however, that she informed Poch prior to sentencing that it was entirely his decision whether to exercise that right or not, and she discussed with Poch the "pros and cons" of exercising that right.

¶32 Poch, in turn, testified that his trial counsel's advice "scar[ed] him out of" exercising his right of allocution. Poch confirmed, however, that his trial counsel informed him that it was his decision whether to exercise this right. The circuit court concluded that Poch's trial counsel did not perform deficiently because she reasonably advised Poch not to exercise his right of allocution, and that Poch knew that the decision to exercise this right was ultimately his choice and he chose to follow counsel's advice.

¶33 On appeal, Poch fails to explain why his trial counsel's advice was wrong, unreasonable, or how it adversely impacted his sentence. Consequently, we could deem Poch's argument on this issue undeveloped and not consider it further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶34 Even so, we agree with the circuit court and the State that Poch's trial counsel did not perform deficiently. Trial counsel testified that she reviewed the "pros and cons" of Poch's exercise of his right of allocution with him. Indeed, Poch testified that he knew that it was his decision whether to exercise his right. Further, trial counsel's concern that Poch would harm the defense's position if he exercised his right was reasonable. Trial counsel testified that she based her

advice to Poch on her previous interactions with him and his statements in the PSI. Furthermore, at sentencing, trial counsel relied on an alternative defense sentencing memorandum that responded to the PSI. Accordingly, we conclude that Poch's trial counsel did not perform deficiently by advising him not to exercise his right of allocution, and we do not reach the prejudice prong of the ineffective assistance of counsel analysis. *See **Breitzman***, 378 Wis. 2d 431, ¶37.

### III. Poch's remaining arguments

¶35  Without citation to legal authority, Poch also argues that his trial counsel was ineffective at the suppression hearing because she "did not object to the fact that the [circuit] court had already" viewed the video recording of the interview and reviewed the combined audio transcript outside the presence of the parties. According to Poch, this lack of objection is an issue due to the lack of "quality" in the audio recordings and, subsequently, the combined audio transcript. Poch contends that he should have had an opportunity to correct any inaccuracies in the combined audio transcript, particularly with respect to the portions that were transcribed as "inaudible."

¶36  However, Poch failed to raise this ineffective assistance claim in the circuit court. Therefore, he has forfeited a challenge to this particular claim. *See* WIS. STAT. RULE 809.30(2)(h) (requiring an issue to be raised by postconviction motion prior to an appeal "unless the grounds for seeking relief are sufficiency of the evidence or issues previously raised"); ***State v. Machner***, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (holding that it is "a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel" at a hearing in the circuit court). Moreover, Poch fails to explain how the combined audio transcript is incorrect, and the record before us

does not include the audio recordings. *See Fiumefreddo*, 174 Wis. 2d at 27; *supra* note 7.

¶37    Lastly, Poch alleges a number of other errors, including, as best we can decipher, that his trial counsel was forced to provide the circuit court with the defense's theory as to when and how the ***Miranda/Goodchild*** violation took place; the court erroneously exercised its sentencing discretion; and he was sentenced on an incorrect charge.  These arguments are undeveloped and we need not address them. *See **Pettit***, 171 Wis. 2d at 646.  Addressing the merits of Poch's challenge to the court's sentence, however, we note that in imposing Poch's sentence, the court reviewed appropriate sentencing factors—including the gravity of the offenses and their impact on the victim—and stated that although it would have appreciated hearing from Poch, it was not considering Poch's refusal to exercise his right of allocution in imposing his sentence. *See **State v. Gallion***, 2004 WI 42, ¶¶43-44, 270 Wis. 2d 535, 678 N.W.2d 197.

¶38    As to the incorrect charge assertion, Poch argues that he believed he was pleading to a felony without a mandatory minimum confinement period. Poch argues that the PSI states that he pled to WIS. STAT. § 948.025(1)(b), which includes a mandatory minimum. *See* WIS. STAT. § 939.616.  However, the plea questionnaire form and the judgment of conviction reflect that Poch was convicted under § 948.025(1)(d), which does not carry a mandatory minimum.  At the sentencing hearing, the parties articulated that Poch was convicted under § 948.025(1)(d) and that there was no mandatory minimum involved.  The parties also explained to the circuit court that no correction to the PSI was warranted because the author "didn't consider the mandatory minimum."  Thus, there was no error, and Poch was not sentenced under an incorrect statute.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.